IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHELE POLAND, on behalf of herself and others
similarly situated,

                    Plaintiff,                                OPINION and ORDER

        v.                                                    21-cv-165-jdp

SPRINGS WINDOW FASHIONS, LLC,

                    Defendant.

---

Plaintiff Michele Poland was a field sales representative for defendant Springs Window Fashions, LLC, which manufacturers window treatments and sells them in retail stores throughout the country. Poland is suing Springs under the Fair Labor Standards Act (FLSA), contending that Spring failed to pay her overtime wages. It's undisputed that Springs didn't pay Poland overtime—she receives a salary rather than an hourly rate—but Springs contends that the FLSA simply doesn't apply because the work Poland performed falls into an exemption for outside sales or administrative work.

The parties stipulated to conditional certification of a collective that includes all field sales representatives and territory sales managers. Dkt. 56. Since then, the territory sales managers have withdrawn their consents to opt in to the collective, *see* Dkt. 83, leaving 34 field sales representatives who are based throughout the country. Springs now moves to decertify the collective, contending that there are any too many differences in the experiences of the collective members to determine across the collective whether the FLSA's overtime requirements apply to all the field sales representatives. Dkt. 131. At the same time, Springs

filed four summary judgment motions targeting different opt-in plaintiffs. Dkts. 87, 104, 115, and 121.[1]

The court concludes that Poland has failed to meet her burden to show that the field sales representatives are similarly situated to each other, so the court will grant Springs's motion to decertify the collective. Springs has cited testimony from several of the opt-in plaintiffs showing that there were significant differences in how they performed their jobs, and these differences are relevant to determining whether the representatives qualify for an exemption. Poland hasn't cited any evidence that supports a contrary conclusion, and she hasn't identified a way that the collective's claims can be tried together without individually determining whether each member qualifies for an exemption.

Granting the motion to decertify means that the opt-in plaintiffs are no longer part of the case, so the court will deny as moot Springs's motions for summary judgment on the four opt-in plaintiffs. This means that any opt-in plaintiff—including the four opt-in plaintiffs who were the subject of Springs's summary judgment motions—remain free to bring their own claims in a separate lawsuit. Springs didn't move for summary judgment on Poland's claims, so the case will proceed to trial on those claims in the absence of a settlement.

---

[1] Generally, courts in this circuit decide collective and class certification issues in advance of summary judgment. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016). For reasons they don't explain, the parties asked Magistrate Judge Stephen Crocker to set a schedule allowing motions on certification and summary judgment to be filed two weeks apart. *See* Dkt. 60, at 3. In response to a motion from the parties, the magistrate judge later set the same deadline for both sets of motions. Dkt. 79.

ANALYSIS

## A. Legal standard

The FLSA allows a plaintiff to bring claims on behalf of other employees if the employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b). The statute doesn't define what it means to be similarly situated, but the Court of Appeals for the Seventh Circuit has concluded that "there isn't a good reason to have different standards" for certifying a class under Federal Rule of Civil Procedure 23 and a collective under § 216(b), so it has applied the Rule 23 standard to collective actions. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013).

The parties in this case cite a different, three-factor test used by other courts in cases under § 216(b), including the district court in *Espenscheid*, 2011 WL 2009967, at *4 (W.D. Wis. May 23, 2011). But any differences between the Rule 23 standard and the alternative standard cited by the parties are unimportant for the purpose of this case. Under both tests, the plaintiff must show that the claims of the employees in the class or collective are similar enough so that substantial merits issues can be resolved collectively without requiring individualized inquiries. *See Butler v. Sears, Roebuck and Co.,* 702 F.3d 359 (7th Cir. 2012); *Long v. Epic Sys. Corp.,* No. 15-cv-81-bbc, 2016 WL 4625497, at *4–5 (W.D. Wis. Sept. 6, 2016). Springs's argument for decertification focuses on this requirement. Specifically, Springs says that differences in the testimony of the opt-in plaintiffs show that the court or the jury will have to determine employee by employee whether the work that employee performs is subject to the FLSA's requirements regarding overtime pay.

**B. Merits**

The general rule under the FLSA is that employers must pay their employees at least 1.5 times their regular hourly rate when working more than 40 hours in a workweek. 29 U.S.C. § 207(a)(1). But this requirement doesn't apply to "any employee employed in a bona fide executive, administrative, or professional capacity, . . . or in the capacity of outside salesman." 29 U.S.C. § 213(1). In this case, Springs contends that the administrative and outside sales exemptions apply to at least some of the collective members. Springs also contends that the opt-in plaintiffs have provided varying testimony about the type of work that they do, suggesting that the court will have to make an individualized determination regarding whether a particular employee qualifies for an exemption.

It is Springs's burden to show on the merits that an employee falls within an exemption, but it is Poland's burden to show that it is appropriate to resolve the exemption issues on a class-wide basis. *See Long v. Epic Sys. Corp.*, No. 15-cv-81-bbc, 2016 WL 4625497, at *6 (W.D. Wis. Sept. 6, 2016). Poland hasn't met that burden for the administrative exemption, which makes it unnecessary to consider the outside sales exemption. Springs can prevail on the merits if it shows that either exemption applies, so even if Poland is correct that the court can collectively decide that the outside sales exemption doesn't apply, the court would still have to consider the administrative exemption.

The FLSA doesn't define what "administrative" work is under § 213(1). But the Department of Labor has issued a regulation that includes three requirements: (1) the employee's salary is more than $684 a week; (2) the employee's "primary duty" is "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the "primary duty includes the exercise of

4

discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. Both sides rely on the department's regulations interpreting the exemptions, and the court of appeals has cited them with approval. *See, e.g., Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 981 (7th Cir. 2011); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 633 (7th Cir. 2010); *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1073 (7th Cir. 1997). So the court will assume that the regulations provide an accurate interpretation of the law without determining whether they are entitled to deference.

The parties agree that the salary requirement is met. The key disputes are whether: (1) the primary duty of field sales representatives is merchandising and other manual labor or a combination of training and promoting sales; and (2) if the employees' primary duty is training and promoting sales, whether employees are exercising discretion and independent judgment when performing that duty. Determining whether an employee's job meets these elements "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1052 (7th Cir. 2020).

The court begins with the issue of the field sales representatives' primary duty. The parties agree that merchandising qualifies as manual work (and is therefore not exempt) and that training and sales promotion qualifies as "work directly related to the management or general business operations of the employer or the employer's customers." *See Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 757 (7th Cir. 2013) ("advising salespeople and promoting the sales" of the employer's products satisfies the "directly related" requirement). The question is whether all the field sales representatives have the same primary duty.

Neither side provides a general overview of the responsibilities of a field sales representative. But the parties provide some details in their briefs and proposed findings of

fact. Each field sales representative is assigned a territory where they service retail stores such as Home Depot, Lowe's, and Budget Blinds. Dkt. 165, ¶ 9; Dkt. 163, ¶ 14; Dkt. 157, ¶ 9. The parties identify three types of responsibilities for a field sales representative: (1) setting up and maintaining displays in the retail stores; (2) training and assisting the store sales associates in selling Springs's products; and (3) participating in "selling events," which one representative described as "events where the [representative] goes to a store location, sets up additional displays, and assists the store associates that are available, during their day to be able to give out information to customers," Dkt. 135 (Stovall Dep. 63:14-22).

Neither the FLSA nor the regulations provide a precise method for determining an employee's primary duty. But "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). Courts must also consider the importance of the task to the employer. *See Demos v. City of Indianapolis*, 302 F.3d 698, 704–05 (7th Cir. 2002).

To support its argument that determining an employee's primary duty will require individualized analyses, Springs cites the deposition testimony of several of the opt-in plaintiffs. For example, Sheryl Hoover said that she spent 75 percent of her time maintaining displays and doing other manual work, Dkt. 139, at 157:2–6; Susan Miller said that the "majority" of her time was spent on training and sales promotion, Dkt. 124, at 159:3–5; and Valerie Askew said that her time was split "mostly 50-50" between manual work like merchandising and administrative work like training and sales promotion, Dkt. 140, at 106:18–24. Springs says that there is so much variation in how representatives across the country perform their jobs that the court or the jury will have to consider the individual circumstances of each one before deciding whether an exemption applies.

Poland doesn't respond directly to the testimony cited by Springs. Instead, she cites different testimony of several field sales representatives, including Miller and Askew, who said that merchandising was a significant part of the job. She also cites the job description for field sales representatives and the deposition testimony of Jim Gross, the vice president of field sales and services, as evidence that the primary duty of field sales representatives is merchandising. The job description includes "display integrity" as one of the responsibilities of a representative, and it includes "physical requirements," such as lifting up to 15 pounds without assistance. Dkt. 146-1, at 3. Gross testified that a representative is "going to probably end up encountering some type of display maintenance" over the course of a workday. Dkt. 113, at 57:9–10.

The court may consider job descriptions and testimony of high-ranking officers as evidence of what an employee's primary duty is. *See Austin v. CUNA Mut. Ins. Soc.*, 240 F.R.D. 420, 429 (W.D. Wis. 2006). But the portions of the job description and the testimony that Poland cites simply don't address the question of primary duty. Gross's cited testimony is that a field sales representative is likely to spend *some* time doing merchandising, and the job description lists merchandising as one of many parts of the job. If anything, the job description suggests that training and sales promotion are the primary duties. It says that representatives "will spend approximately 70% of their time in stores training and selling the retail store associates on the brands we sell." Dkt. 146, at 1. In any event, titles and job descriptions aren't controlling. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 870 (7th Cir. 2008). The actual day-to-day job activities of the employee are more important. *Austin*, 240 F.R.D. at 429.

The parties agree that all field sales representatives performed some amount of manual labor and some amount of sales promotion and training. But the question is whether the court or the jury can collectively decide whether manual labor was the *primary duty* of a field sales

representative. The testimony cited by Springs suggests that individualized inquiries will be needed to make that determination, and the evidence Poland cites doesn't undermine that view. That evidence shows that manual labor is part of a field sales representative's job, but it doesn't show that all field sales representatives have the same primary duty.[2] So the court concludes that Poland has failed to show that the collective members are similarly situated on the issue of primary duty.

Alternatively, Poland contends that any differences in the field sales representatives' primary duties don't matter because none of the representatives exercise discretion and independent judgment when training or promoting sales, which is also a requirement for the administrative exemption. 29 C.F.R. § 541.200.[3] If none of the representatives exercised discretion and independent judgment when performing their primary duties, then the court could determine the applicability of the exemption across the collective regardless of what the primary duties were.

But the court isn't persuaded that similarities in the collective's exercise of judgment and discretion render irrelevant the differences in the collective's primary duties. As an initial

---

[2] Field sales representatives are required to log their daily activities, but neither party relied on those logs to show whether the representatives are similarly situated in how much they perform different parts of their job. Poland submitted hundreds of pages of logs for the four opt-in plaintiffs who are the subject of Springs's summary judgment motions. *See* Dkts. 157-2, 161-2, 163-2, and 165-2. But Poland doesn't attempt to summarize what the logs show. A cursory review of the logs doesn't show a clear and consistent trend in the time spent on merchandising versus sales promotion and training.

[3] Both sides assume that any discretion and judgment that field sales representatives exercise relate to "matters of significance" within the meaning of 29 C.F.R. 541.200, so the court does not address that issue.

matter, the court of appeals has suggested that training inherently involves the exercise of discretion and independent judgment. *See Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535–36 (7th Cir. 1999) ("[T]raining responsibilities . . . are evidence of duties that are administrative in nature."). Poland says that any training done by the collective is simply a color-by-numbers exercise applying the training materials that Springs provides. But employee testimony was not uniform on that issue.

For example, Scott Teitelbaum said that there was no variation in his trainings; he relied entirely on slides prepared by the company. Dkt. 137, at 37:7–38:15. But other field sales representatives said that they adapted their trainings as needed. For example, Miller said that she used the company slides only as a "guideline," and she "didn't cookie-cut the training," Dkt. 124, at 49:3–7 and 64:15–23. She also conducted informal trainings with individual sales associates and tailored the training based on their experience level. *Id.* at 37:5–15, 49:10–50:18 and 63:15–64:10. She designed her own fliers. *Id.* at 64:24–65:16. She decided when to hold the trainings. *Id.* at 132:4–6. Similarly, Kristine Gettel-Barrett said that she employed different training and sales strategies with different clients, tailored her trainings based on the experience level of the client, and modified trainings by turning them into games. Dkt. 107, at 81:5–20, 93:7–103:21, and 164:5–167:12. Other representatives provided similar testimony that they used discretion and judgment in determining how to train. *See*, *e.g.*, Dkt. 118 (Wheeler Dep. 29:5–18) (testifying that she tailored her trainings based on the season, which products were most popular, and which retailer was involved); Dkt. 91 (Grant Dep. 28:17–31:2, 45:20–47:4, 132:19–134:8) (testifying that she adjusted trainings based on knowledge of the sales associates and which retailer was involved and describing different ways she trained associates to sell).

Poland contends that even the representatives who tailored their trainings to different clients weren't exercising discretion and judgment because the "substance" of their trainings came from Springs. Dkt. 146, at 18. She repeatedly cites Gross's answer of "Yes" to the question whether field sales representatives are "expected to use [Springs] talking points" in their training. Dkt. 113, at 102:16–18. But employees may exercise discretion and judgment even when they receive significant guidance from the employer, as the court of appeals made clear in *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012). In that case, the court concluded that pharmaceutical sales representatives satisfied the discretion and independent judgment prong of the administrative exemption, even though the employer "gave the representatives precise wording and materials" to use during presentations to doctors. *Id.* at 581. The court relied on the fact that the presentations weren't scripted: the "representatives' ability to be responsive to physicians' needs require[d] significant discretion in the manner and mode of the delivery of that message and in the details emphasized." *Id.* at 565. The court also noted that the sales representatives structured their own days, worked largely alone, and were not subject to strict oversight and control in the performance of their duties. *Id.* at 581–82.

This is similar to the experience of at least some of the field sales representatives in this case. As already discussed, Springs cited testimony of field sales representatives who tailored their trainings as needed. Springs also cited testimony from representatives who had limited supervision. For example, Miller testified that she met with her supervisor about once a year, and there were days when she had no communication with him. Dkt. 124, at 129:12–19 and 158:18–20. And Grant testified that she doesn't check in with her supervisor daily, she has monthly calls with calls with him, and her managers rarely accompany her to stores. Dkt. 157, ¶¶ 62–64. Poland points out that representatives were required to log their activities, but that

10

was also the case in *Schafer-LaRose*. *See* 679 F.3d at 581 ("[T]hey keep extensive records, through which management can and does monitor their progress, [but] neither the fact that management reviews their work nor that they are required to keep such records detracts from the discretion they exercise in the core of their work."). So *Schaefer-LaRose* is instructive.

The bottom line is that Poland hasn't met her burden to show that the collective's claims can be decided without conducting individualized inquiries into the specific facts and circumstances of each employee. The court will grant Springs's motion to decertify the collective.

In the event that the court decertifies the class, Poland asks the court to toll the opt-in plaintiffs' statute of limitations period for 30 days to give them an opportunity to prepare another lawsuit. But this court isn't deciding the merits of the opt-in plaintiffs' claims, and it is generally for the court deciding the merits to also decide whether and to what extent a claim is timely. Poland cites no authority that would allow this court to bind a different court in a future lawsuit on a determination regarding equitable tolling. Of the three cases Poland cites, two of them involved the court tolling the limitations period on the claims that court was resolving on the merits. *See Kutzback v. LMS Intellibound, LLC,* 233 F. Supp. 3d 623 (W.D. Tenn. 2017); *David v. Kohler Co.,* No. 215CV01263STAEGB, 2017 WL 3865656, at *1 (W.D. Tenn. Aug. 30, 2017). One court did toll the limitations period for potential future cases after decertifying a collective, *see Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333 (ALC)(SN), 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017), but the court relied vaguely on its "equity powers" without explaining how its equitable authority extended to future lawsuits. The court isn't persuaded by that conclusory assertion.

This court considered a similar issue before. In *Kreckow v. UPS Ground Freight, Inc.*, No. 08-cv-199-slc, 2008 WL 4756481 (W.D. Wis. Oct. 27, 2008), the plaintiff asked the court to stay the limitations period after concluding that the plaintiff had failed to show that the court had subject matter jurisdiction under 28 U.S.C. § 1332. The court denied the request, stating that the plaintiff was "making the argument to the wrong court. . . . This court has no authority to tell the state court how it must rule in the context of its own cases." *Id.* at 1; *see also Nelson v. U.S. Army,* No. 12 C 4718, 2013 WL 5376650, at *7 (N.D. Ill. Sept. 25, 2013) ("[E]quitable tolling as to hypothetical future actions would also be improper, as the issue is not yet ripe for decision."). The court reaches the same conclusion in this case.

The opt-in plaintiffs may have compelling arguments for equitable tolling. But those arguments will have to be presented to the courts in which they refile their claims. To limit potential prejudice to the collective, the court will direct Poland's counsel to provide prompt notice to the opt-in plaintiffs that the collective has been decertified and that the statute of limitations is running. *Cf. Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002) (requiring notice to class after decertification).

ORDER

IT IS ORDERED that:

1. Defendant Spring Window Fashions, LLC's motion for decertification, Dkt. 131, is GRANTED. The collective is decertified and will proceed solely on plaintiff Michele Poland's claims.

2. The motions for summary judgment on the claims of four opt-in plaintiffs, Dkts. 87, 104, 115, and 121, are DENIED as moot.

3. Counsel for Poland is directed to promptly provide written notice to the opt-in plaintiffs that the case has been decertified and that the statute of limitations on their claims is running.

Entered August 5, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge